IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| PLAINTIFF, | : |
| v. | : CIVIL ACTION NO. 2:05cv1086-WKW |
| EIGHTY THOUSAND SIX HUNDRED THIRTY-THREE DOLLARS ($80,633.00) IN UNITED STATES CURRENCY; FOUR THOUSAND EIGHT HUNDRED SEVENTY-EIGHT DOLLARS ($4,878.00) IN UNITED STATES CURRENCY; AND, THIRTY-SIX THOUSAND FIVE HUNDRED DOLLARS ($36,500.00) IN UNITED STATES CURRENCY, | : |
| DEFENDANTS. | : |

THE UNITED STATES OF AMERICA'S BRIEF
IN OPPOSITION TO CLAIMANTS' MOTION TO SUPPRESS

Comes now the United States of America (United States), by and through Leura G. Canary, United States Attorney, Middle District of Alabama, and John T. Harmon, Assistant United States Attorney, and states as follows:

I. Background

On January 5, 2007, a hearing on Jacquard Merritt's and Michael Coleman's (hereinafter "Claimants") Motion to Suppress was conducted before the Court. The United States submits this brief in opposition to the motion.

1

## II. Argument

A. Probable Cause For Seizure Of The Defendant Currency.

   1. The following evidence was introduced by the United States at the January 5, 2007, hearing.

      a. Coleman and Merritt were seen conversing and together approaching the screening area at the Montgomery Airport.

      b. Coleman passed through the screening area without incident.

      c. A large quantity of cash was seen in Merritt's shaving kit while it was going through the screening process at the Montgomery Airport. Upon discovery of this cash, Merritt was observed acting nervously, pacing and talking on his cell phone. While on his cell phone he stated, "They found it." Because of his behavior, Merritt was asked to go to the nearby police office for further screening.

      d. Because he had observed Coleman and Merritt together and due to Merritt's suspicious behavior, the Transportation Security Agency (TSA) supervisor decided to recall Coleman for further screening. This decision was based upon security concerns arising out of Merritt's behavior.

      e. Agents approached Coleman in the boarding area and he voluntarily walked with them back to the screening area. At the door to the police office, Coleman attempted to flee but was

brought back into the office. Coleman dropped cash during this attempt to flee.

 f. Coleman and Merritt were kept separated. During an officer security search of Coleman, money was found and additional cash was found secreted on his person under his clothes.

 g. Coleman and Merritt gave conflicting stories on their reasons for traveling. Merritt stated that they were going to buy real property. Coleman stated that they were buying clothes and shoes to sell.

 h. Merritt had purchased round-trip tickets to San Antonio, Texas with cash for himself and Coleman. The scheduled departure for both tickets was mid-day July 6, 2005 and the return was very early the next day, July 7, 2005.

 i. More cash was found in Coleman and Merritt's checked baggage.

 j. A small quantity of marijuana residue was found in one of Merritt's bags.

 k. A trained drug dog alerted on the currency.

 l. San Antonio, Texas is a "source city" for illegal drug importation into the Montgomery, Alabama area.

 m. The cash was packaged in a suspicious manner.

 n. The amount of cash seized was over $122,000.00 and consisted of mixed small denominations.

    o. Coleman offered a law enforcement officer some of the money in an apparent bribe attempt.

 2. This evidence provides probable cause for seizure of the Defendant currency.  See U.S. v. $242,484.00, 389 F.3d 1149, 1167-68 (11th Cir. 2004).  Taken as a whole, this evidence clearly shows that this currency was either the proceeds of an illegal drug transaction or was intended to facilitate such a transaction.

> [T]he existence of probable cause is judged not with clinical detachment, but with a common sense view to the realities of normal life." (internal quotation marks and citations omitted). (cite omitted) Id. at 1167.

 B. <u>This Evidence Was Not Obtained In Violation Of The Fourth Amendment</u>.

 Warrantless seizures of property are authorized if there is probable cause to believe the property is subject to forfeiture and an exception to the warrant requirement is applicable.  See 18 U.S.C. § 981(b) made applicable hereto by 21 U.S.C. § 881(b).  See also Florida v. White, 526 U.S. 559 (1999).  Thus, if there was probable cause to believe the case was subject to forfeiture, it may be seized pursuant to the "plain view" doctrine.[1]  See U.S. v.

---

[1] The United States also contends that authorities could have seized the property under the exigent circumstances doctrine.

$555,933.89, more or less, in U.S. Funds, 287 F.3d 66, 81 (2nd Cir. 2002).

If the evidence listed in II(A) above was obtained legally, then the seizure of the cash was constitutional.

The initial review of Coleman's carry-on luggage was required for passenger and airline security. Once the large amount of cash was observed and Coleman began acting suspiciously, the same security requirements made further investigation of the situation necessary. Airline security also prompted a further review of Coleman due to his connection with Merritt. Of course Coleman's attempt to flee immediately raised serious security concerns including, but not limited to, the effectiveness of his initial security check; and his access, although brief, to the unsecured airport area where he could have obtained a weapon.

The fact that the initial and subsequent screenings of Coleman and Merritt were to locate weapons, explosives or dangerous items but resulted in the seizure of cash is of no concern.

> As long as the scope of that initial search comported with the Fourth Amendment-i.e., was no more intrusive than necessary to accomplish its purpose of detecting

---

Failure to seize this cash would have resulted in its removal by the claimants and its loss. See U.S. v. Miravalles, 280 F.3d 1328, 1331, n.4 (11th Cir. 2002).

>  weapons, or explosives-then it is of no constitutional moment that the object found was not what was sought....(cites omitted).

$555,933.89 at 81-82.

Once the TSA personnel had observed the cash possessed by Coleman and Merritt and their very suspicious behavior, they were turned over to law enforcement officers for further investigation. This supports the testimony at the suppression hearing by a TSA agent that their concern was solely airline security and not seizure of the cash.

At that point, with reasonable suspicion, the government may briefly detain a suspect and personal baggage for investigative purposes. See U.S. v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d (1989); U.S. v. Place, 462 U.S. 696, 697-98, 103 S.Ct. 2637, 2639-40, 77 L.Ed.2d 110 (1983); U.S. v. Malone, 886 F.2d 1162, 1164 (9th Cir. 1989).

The amount of cash involved, the highly suspicious behavior of Coleman and Merritt, their destination (a source city for drugs), the method of purchasing their ticket, the short duration of their trip, the packaging of the cash and the discovery of additional cash are facts that support a reasonable suspicion that they were involved in criminal activity and justified this

brief detention.[2]  Moreover, the mere fact that the officers were aware of the amount of cash involved, the denominations, and that it was being carried and secreted in a highly unusual manner gave the case a sufficient incriminating nature to validate a detention. $555,933.89 at 85. (Discussing volume of money orders seized and the fact that they were unsigned, undesignated and of small denominations as incrimination.)

Coleman and Merritt then gave conflicting stories about their trip, Merritt gave an extremely implausible story about the purpose of the trip and Coleman offered an officer a bribe.

Drug Enforcement Administration (DEA) agents were then called to the airport along with a trained drug dog.  Coleman gave no additional statement and Merritt continued with his implausible story.  Their checked baggage was reviewed and additional cash was found.  More cash was also found on Merritt and marijuana residue was found in one of his bags.  Finally, a trained drug dog alerted

---

[2]Moreover, it is not fatal to the government's position that possession of cash and other factors supporting seizure were not all inherently illegal.

> Determination of probable cause (or reasonable suspicion) is an objective assessment-namely, would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that action taken was appropriate (cites omitted)- so that a search or seizure may be upheld if the facts known to the officer support the requisite level of suspicion even if the officer does not subjectively believe them to be so. $557,933.89 at 84-85.

on the cash and on Merritt's bag.  Both Coleman and Merritt were then released.[3]

The United States recalls the testimony at the suppression hearing to be that the DEA agents and the drug dog arrived within 45 minutes of the initial detention and that Coleman and Merritt left the airport within one hour of that detention.

A 38 minute detention of luggage to conduct a dog sniff is constitutional.  See U.S. v. McFarley, 991 F.2d 1188, 1193-94 (4th Cir. 1993).  An hour delay in obtaining a drug dog was not unconstitutional in light of the diligence of the agents in giving receipts for detained items and instructions on how to retrieve them.  U.S. v. Frost, 999 F.2d 737, 742 (3rd Cir. 1993).[4]

In summary, there was no arrest of either Coleman or Merritt.  They and their luggage were briefly detained, based upon a reasonable suspicion, to investigate the situation.  During this justified investigation, evidence was recovered which demonstrated probable cause to believe that the defendant cash was subject to forfeiture.  At that point, seizure of the cash was justified and constitutional.

---

[3]This supports the law enforcement officers and DEA agent testimony that Coleman and Merritt were free to leave although parts of their luggage and the case would have been retained.

[4]The uncontroverted evidence at the hearing was that Coleman and Merritt were given receipts for the seized cash and were told that they could provide documentation of a legitimate source for the cash to regain it the next day.

### III. <u>Conclusion</u>

In reviewing evidence in cases such as this one the court should "....not try to pick them off, one by one, by conjuring up some alternative hypothesis of innocence to explain each circumstance in isolation." <u>$242,484.00</u> at 1167.

Here, security personnel and law enforcement officers were faced with circumstances which, taken together, required as a minimum an investigation of a highly suspicious situation. This investigation, done at the minimum level of intrusion upon the claimants, legally uncovered evidence that clearly showed probable cause to believe that the seized cash was subject to forfeiture. The seizure should be upheld.

Respectfully submitted this 12th day of January, 2007.

                         FOR THE UNITED STATES ATTORNEY
                             LEURA G. CANARY

<u>/s/John T. Harmon</u>
John T. Harmon
Assistant United States Attorney
Office of the United States Attorney
Middle District of Alabama
One Court Square, Suite 201 (36104)
Post Office Box 197
Montgomery, Alabama 36101-0197
Telephone:(334) 223-7280
Facsimile:(334) 223-7560

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on January 12, 2007, I electronically filed the foregoing Brief in Opposition to Claimants' Motion to Suppress with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: **Joe M. Reed.**

                                      <u>/s/John T. Harmon</u>
                                      John T. Harmon
                                      Assistant United States Attorney